**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

FLORENTINA DEMUTH,
*Plaintiff-Appellant*,

v.

COUNTY OF LOS ANGELES, a public
entity; LOS ANGELES COUNTY
SHERIFF'S DEPARTMENT, a public
entity; WAI CHIU R. LI, an
individual,
*Defendants-Appellees*.

No. 12-57197

D.C. No.
2:10-cv-06783-
MWF-CW

OPINION

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted
February 10, 2015—Pasadena, California

Filed August 14, 2015

Before: Alex Kozinski, Morgan Christen
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Kozinski

## SUMMARY[*]

### Civil Rights

The panel affirmed in part and reversed in part the district court's bench trial judgment in an action brought under 42 U.S.C. § 1983 by a Los Angeles County public defender who alleged that her Fourth Amendment rights were violated when a deputy sheriff briefly arrested her pursuant to a judicial command that she appear in court.

The panel held that the deputy sheriff was not entitled to qualified immunity because he could not reasonably have believed that he had one of the usual Fourth Amendment justifications for the arrest. The panel held that the presiding referee's order, by its clear terms, did not authorize the deputy sheriff to seize plaintiff, and that no reasonable officer could have understood the referee as ordering that plaintiff be forcibly brought into court.

The panel affirmed in part and reversed in part, in a memorandum disposition, the district court's denial of quasi-judicial immunity, and its adverse verdict on plaintiff's state law and excessive force claims.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Daniel A. Crawford (argued), Henry G. Weinstein, Crawford Weinstein LLP, Sherman Oaks, California, for Plaintiff-Appellant.

Steven Jeff Renick (argued), Manning & Kass, Ellrod, Ramirez, Trester LLP, Los Angeles, California; Maureen Thomas, Michael Thomas, Thomas and Thomas, Agoura Hills, California, for Defendants-Appellees.

## OPINION

KOZINSKI, Circuit Judge:

A deputy sheriff briefly arrested counsel Florentina Demuth pursuant to a judicial command that she appear in court. We decide whether the deputy is protected by qualified immunity.

## FACTS

This story begins in Los Angeles's Los Padrinos Juvenile Courthouse. Florentina Demuth, a public defender, arrived shortly after 8:30 a.m. She had a hearing for one of her clients that day, though it wasn't set for a specific time. Around 9:00 a.m., she had a brief conversation with Heidi Shirley, who was the presiding referee[1] in Demuth's case. Demuth also had a conversation with opposing counsel in which Demuth indicated that she didn't intend to return to

---

[1] A referee is a person who serves as a subordinate judicial officer on a part- or full-time basis. Cal. Welf. & Inst. Code § 255.

court until approximately 1:30 p.m.  Demuth then left to work in her office, which was located in a different part of the building.  A short while later, Referee Shirley asked Li, the sheriff's deputy on duty in her courtroom, to page Demuth over the court's intercom.  Deputy Li paged Demuth several times.  Demuth heard at least one page, but she didn't respond.  Deputy Li also telephoned Demuth's direct line.  Demuth heard her direct line ringing, but she didn't answer.

This was not unusual.  Lawyers, especially public defenders, were often absent from the courtroom when their case was called, and it typically took some time—and a few pages—to get them there.  While she was being paged, Demuth was with her supervisor, Patricia De La Guerra Jones, who had instructed Demuth to finish an assignment before returning to court.

Referee Shirley was eager to hear the case of Demuth's client.  She had approximately 53 cases on her calendar to hear before 2:00 p.m., and the deadline to hear the case of Demuth's client was that day.  Around 9:45 a.m., Referee Shirley made the following statement:  "Alright, I order Ms. Demuth to come to this courtroom.  If she refuses, then Ms. De La Guerra Jones will have to come in and explain to me why this is happening."  Li found Demuth in her office suite talking to De La Guerra Jones.  Li told Demuth several times that she had been called by Referee Shirley, to which Demuth responded "just a minute," or something to that effect.  After some back and forth, Li raised his voice and demanded that Demuth come immediately. Demuth responded that "[i]f you want me to come right now, you'll have to arrest me."  Li then did just that:  He put Demuth in handcuffs and escorted her to Referee Shirley's courtroom, where he removed the handcuffs.  The arrest lasted some 11 minutes.

Demuth sued Li and the County of Los Angeles under 42 U.S.C. § 1983 and a variety of state law theories. After a bench trial, defendants prevailed on all counts. The district court concluded that the arrest violated Demuth's Fourth Amendment rights, but that Li was protected by qualified immunity. Demuth appeals. We review the district court's factual findings for clear error and its grant of qualified immunity de novo.

## DISCUSSION

Li concedes that he violated Demuth's Fourth Amendment rights but stands on the district court's determination that he's entitled to qualified immunity. This doctrine protects government officials from suits for damages unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982). Li can only be liable if "every reasonable official would have understood that" arresting Demuth violated her Fourth Amendment rights. *Mattos* v. *Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc) (internal quotation marks omitted).

While the law must be unambiguous to overcome qualified immunity, that doesn't mean that every "official action is protected . . . unless the very action in question has previously been held unlawful." *C.B.* v. *City of Sonora*, 769 F.3d 1005, 1026 (9th Cir. 2014). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope* v. *Pelzer*, 536 U.S. 730, 741 (2002). This is especially true in the Fourth Amendment context, where "the constitutional standard— reasonableness—is always a very fact-specific inquiry." *C.B.*, 769 F.3d at 1026.

Li could not reasonably have believed that he had one of the usual Fourth Amendment justifications for the arrest:  He had no warrant; Demuth was not suspected of a crime; he was not in hot pursuit or performing a community care-taking function, etc.  Referee Shirley's order, by its clear terms, did not authorize Li to seize Demuth.  As Li testified at trial, Referee Shirley's command was "go . . . get Ms. Demuth; and, if she refused to come to court, then . . . get Ms. De La Guerra Jones."  The referee contemplated the possibility that Demuth might not come when summoned, and gave clear instructions as to what Li was to do in that case: bring her supervisor, presumably to explain why her subordinate was not coming to court when summoned.  No reasonable officer could have understood the referee as ordering that Demuth be forcibly brought into court.  An unreasonable mistake of fact does not provide the basis for qualified immunity.  *See Liberal* v. *Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011).

Li also relies on Demuth's statement that he would have to arrest her to bring her into court immediately.  While challenging someone equipped with a badge, handcuffs and a gun to "arrest me" was unwise on Demuth's part, we fail to see what legal difference her statement makes.  Demuth certainly could not authorize her own arrest and, in any event, Li could not reasonably have believed that Demuth was volunteering for handcuffs.  Demuth was obviously employing "a literary device known as sarcasm."  *MCI Telecomms. Corp.* v. *Am. Tel. & Tel. Co.*, 512 U.S. 218, 228 (1994).  Her statement was a snide way of refusing; no reasonable officer could have thought otherwise.  Having no reasonable basis for believing he was authorized to arrest Demuth, Li is not entitled to qualified immunity.

Demuth also appeals the adverse verdict on her state law and excessive force claims, and Li appeals the denial of quasi-judicial immunity. On these issues, we affirm in part and reverse in part, as explained in the memorandum disposition we file concurrently with this opinion.

\*          \*          \*

No one in this case has covered himself with glory: not the lawyer whose lackadaisical response to a judicial summons and disrespectful retort to a fellow court officer set off this unfortunate chain of events; not the supervisor who did not urge the lawyer to comply promptly with the deputy's repeated requests that she come to court or admonish her for her tart response to the deputy; not the deputy who took the bait and abused his power; not the judges of the Los Padrinos Juvenile Court, who, doubtless aware of the incident, failed to mediate a minor dispute among court officers and allowed it to metastasize into a federal case. What seems to be at stake here is little more than wounded pride, as any damages suffered by the plaintiff seem hardly more than nominal. The dispute should have been resolved by an admission that the deputy violated Demuth's constitutional rights, followed by mutual apologies and a handshake, saving the taxpayers of Los Angeles County the considerable costs of litigating this tiff.

**AFFIRMED IN PART, REVERSED IN PART.**